IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2019-C49, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-C49, <br><br> Plaintiff, <br><br> v. <br><br> 659 BROADWAY RETAIL OWNER LLC, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 22-cv-0435 |

# COMPLAINT

Plaintiff, Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of Wells Fargo Commercial Mortgage Trust 2019-C49, Commercial Mortgage Pass-Through Certificates, Series 2019-C49 ("Lender"), acting by and through its Special Servicer, Midland Loan Services, a division of PNC Bank, National Association ("Midland"), for its complaint in mortgage foreclosure against defendant, 659 Broadway Retail Owner LLC ("Borrower"), avers as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. Wilmington Trust, National Association, is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware. Non-party Midland is the Special Servicer for Lender with respect to the Loan (as defined below).

2. Borrower is a Delaware limited liability company with its principal place of business at c/o The Klein Group, 25B Hanover Road, Florham Park, New Jersey 07932. Upon

information and belief, Borrower's members are variously citizens of the States of New York, New Jersey, Illinois and Maryland, and none of Borrower's members is a citizen of the State of Delaware.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II. FACTS

### A. The Original Loan Transaction

5. On or about December 20, 2018, Rialto Mortgage Finance, LLC ("Original Lender"), issued to Borrower a commercial mortgage loan in the principal amount of $5,800,000.00 (the "Loan").

6. The Loan is evidenced by a Promissory Note in the principal amount of $5,800,000.00 dated December 20, 2018, executed by Borrower in favor of Original Lender (the "Note"), a copy of which is attached hereto as ***Exhibit A***.

7. To secure repayment on the Note, Borrower executed in favor of Original Lender a Leasehold Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated as of December 20, 2018 (the "Mortgage"), with respect to the leasehold estate in the real property located at 77 Bleecker Street, a/k/a 659 Broadway, Store #6 in the City of New York (the "Premises"), as more fully described in Exhibit A to the Mortgage. A copy of the Mortgage is attached hereto as ***Exhibit B***. The Mortgage was recorded with the Office of the City Register of the City of New York (the "Recorder") on January 9, 2019, as CRFN 2019000009142.

8. Borrower's leasehold interest in the Premises is evidenced by, *inter alia*, the Lease between 77 Bleecker Street Corp., as Landlord, and Southbro Company, as Tenant, dated

April 2, 1984, as more particularly described in the Mortgage (the "Ground Lease"), which was ultimately assigned to and assumed by Borrower pursuant to an Assignment and Assumption of Master Lease dated December 20, 2018, and recorded on January 9, 2019, as CRFN 2019000009141.

9.  The Loan is also evidenced by a Loan Agreement between Borrower and Original Lender dated as of December 20, 2018 (the "Loan Agreement"), a copy of which is attached hereto as *Exhibit C*. The Note, the Mortgage, the Loan Agreement and various other documents executed by Borrower in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

10. Original Lender properly perfected its lien in the Personal Property (as defined in the Mortgage) by filing a UCC-1 Financing Statement with the Delaware Department of State on January 8, 2019, as Filing No. 2019 0154349, a copy of which is attached hereto as *Exhibit D*.

B.  **The Assignments and Securitization of the Loan**

   1.  **The First Loan Assignment**

11. Pursuant to a General Assignment, a copy of which is attached hereto as *Exhibit E*, Original Lender assigned the Loan to RMF SUB 1, LLC ("First Assignee") (the "First Loan Assignment").

12. In connection with the First Loan Assignment, Original Lender executed for the benefit of First Assignee an Allonge to the Note, a copy of which is attached hereto as *Exhibit F*.

13. Also in connection with the First Loan Assignment, Original Lender executed in favor of First Assignee an Assignment of Leasehold Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement effective as of December 20, 2018, a copy of

3

which is attached hereto as ***Exhibit G***, which was recorded with the Recorder on March 25, 2019, as CRFN 2019000095597.

14. Additionally, Original Lender assigned its lien in the Personal Property to First Assignee by filing a UCC-3 Financing Statement Amendment with the Delaware Department of State on June 20, 2019, as Amendment No. 2019 4262551, a copy of which is attached hereto as ***Exhibit H***.

### 2. The Second Loan Assignment

15. First Assignee assigned the Loan back to Original Lender (the "Second Loan Assignment") via General Assignment, a copy of which is attached hereto as ***Exhibit I***.

16. In connection with the Second Loan Assignment, First Assignee executed for the benefit of Original Lender an Allonge to the Note, a copy of which is attached hereto as ***Exhibit J***.

17. Also in connection with the Second Loan Assignment, First Assignee executed in favor of Original Lender an Assignment of Leasehold Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement effective as of March 5, 2019, a copy of which is attached hereto as ***Exhibit K***, which was recorded with the Recorder on March 25, 2019, as CRFN 2019000095599.

18. Additionally, First Assignee assigned its lien in the Personal Property to Original Lender by filing a UCC-3 Financing Statement Amendment with the Delaware Department of State on June 20, 2019, as Amendment No. 2019 4263179, a copy of which is attached hereto as ***Exhibit L***.

### 3. The Third Loan Assignment

19. The Loan was subsequently securitized and was assigned by Original Lender to Lender (the "Third Loan Assignment") pursuant to a General Assignment, a copy of which is attached hereto as ***Exhibit M***.

20. In connection with the Third Loan Assignment, Original Lender executed for the benefit of Lender an Allonge to the Note, a copy of which is attached hereto as ***Exhibit N***.

21. Also in connection with the Third Loan Assignment, Original Lender executed in favor of Lender an Assignment of Leasehold Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement effective as of March 5, 2019, a copy of which is attached hereto as ***Exhibit O***, which was recorded with the Recorder on March 25, 2019, as CRFN 2019000095601.

22. Additionally, Original Lender assigned its lien in the Personal Property to Lender by filing a UCC-3 Financing Statement Amendment with the Delaware Department of State on June 20, 2019, as Amendment No. 2019 4263286, a copy of which is attached hereto as ***Exhibit P***.

### C. Relevant Contractual Provisions

23. The Mortgage secures, *inter alia*, Borrower's payment and other obligations under the Note, the Loan Agreement and the other Loan Documents. (*See* Mortgage at 1 (Recitals).)

24. Borrower is the title holder of the leasehold estate in the Premises pursuant to the Ground Lease.

25. The Mortgage creates a first priority lien on and security interest in all of Borrower's property, rights, interests and estates, including Borrower's interest in the Ground

Lease, the Improvements and various other property owned by Borrower and collectively defined in the Mortgage as the "Property." (Mortgage § 1.1.)

26. The Loan Agreement has required at all relevant times that Borrower pay to Lender the Monthly Debt Service Payment Amount on each monthly Payment Date until the Maturity Date of January 6, 2029. (Loan Agreement § 2.2.2.)

27. The Loan Agreement provides that it shall constitute an Event of Default "if any portion of the Debt is not paid on or before the date the same is due and payable." (Loan Agreement § 7.1(i).) The Debt is defined by the Loan Agreement to mean "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon and all other sums payable to Lender in respect of the Loan under the Note, this Agreement, the Security Agreement or any other Loan Document." (*Id*. at 9.)

28. The Loan Agreement provides that, "[u]pon the occurrence and during the continuance of an Event of Default, interest on the Outstanding Principal Balance and, to the extent permitted under applicable Legal Requirements, overdue interest in respect of the Loan, shall accrue at the Default Rate," which is defined as "a rate per annum equal to the lesser of (a) the Maximum Legal Rate, or (b) five percent (5%) above the Applicable Interest Rate [of 4.99% per annum]." (Loan Agreement § 2.2.1 & at 1 and 9.)

29. The Loan Agreement also provides that, if any sum due under the Loan Documents is not paid by Borrower on the date on which it is due:

> Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted under applicable Legal Requirements in order to defray the expense incurred by Lender in handling and processing such delinquent payment and to compensate Lender for the loss of the use of such delinquent payment.

(Loan Agreement § 2.2.4.)

30. The Loan Agreement further provides that:

> If, during the continuance of an Event of Default, payment of all or any part of the Debt is tendered by Borrower or otherwise recovered by Lender at any time prior to the Free Window Date, such tender or recovery shall be deemed a voluntary prepayment by Borrower in violation of the prohibition against prepayment set forth in Section 2.3.1 and Borrower shall pay, in addition to the Debt, (i) an amount equal to the Yield Maintenance Premium, (ii) all accrued and unpaid interest on the Outstanding Principal Balance through and including the last day of the Accrual Period related to the Payment Date next occurring following the date of prepayment (or, if such prepayment occurs on a Payment Date, through and including the last day of the Accrual Period related to such Payment Date), and (iii) all other sums due and payable under this Agreement, the Note and the other Loan Documents.

(Loan Agreement § 2.3.3 and at 17 (defining "Yield Maintenance Premium") .)

31. The Mortgage provides that, upon the occurrence of any Event of Default, Lender may, *inter alia*, "declare the entire unpaid Debt to be immediately due and payable." (Mortgage § 8.1(a); *accord* Note Art. 2; Loan Agreement § 7.2.)

32. The Mortgage further provides that, upon the occurrence of any Event of Default, Lender may also, *inter alia*, "institute proceedings for the complete foreclosure of this Security Instrument under any applicable provision of law." (Mortgage § 8.1(b).)

33. Additionally, the Mortgage provides that:

> Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property (including commencing any foreclosure action), whether or not any legal proceeding is commenced hereunder or thereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

(Mortgage § 5.6; *accord* Loan Agreement § 9.13.)

**D. Borrower's Default on its Obligations**

34. Beginning with the Payment Date for June 2020, Borrower failed to pay to Lender the Monthly Debt Service Payment Amount required by the Loan Agreement.

35. Borrower's failure to make the required monthly payments constitutes an Event of Default under the Loan Documents. (*See* Loan Agreement § 7.1(i).)

36. Lender, through its counsel, provided a Notice of Default to Borrower by letter dated August 25, 2020 (the "<u>Notice of Default</u>"), a copy of which is attached hereto as ***Exhibit Q***, which advised Borrower that:

> AS OF THE DATE HEREOF, THE MONTHLY DEBT SERVICE PAYMENT AMOUNT DUE ON THE PAYMENT DATES FOR JUNE, JULY AND AUGUST, 2020, TOGETHER WITH THE ASSOCIATED DEFAULT INTEREST, LATE CHARGES AND COSTS (COLLECTIVELY, THE "<u>DELINQUENT AMOUNTS</u>"), HAVE NOT BEEN PAID BY BORROWER AND, ACCORDINGLY, (A) AN EVENT OF DEFAULT HAS OCCURRED AND IS CONTINUING UNDER THE NOTE, THE MORTGAGE, THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS, AND (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL PAYMENT OF THE DELINQUENT AMOUNTS.

(Notice of Default at 2.)

37. The Notice of Default further advised Borrower that:

> IN THE EVENT THE DELINQUENT AMOUNTS ARE NOT PAID IN FULL WITHIN SEVEN DAYS OF THE DATE OF THIS NOTICE, AT THE OPTION OF LENDER, THE DEBT MAY BE ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE AND DEMAND MADE FOR THE IMMEDIATE AND FULL PAYMENT OF SAME, AND LENDER MAY EXERCISE SUCH OTHER AND FURTHER RIGHTS, INCLUDING BUT NOT LIMITED TO ITS REMEDIES UNDER THE LOAN DOCUMENTS, AS LENDER IN ITS DISCRETION MAY DEEM APPROPRIATE.

(Notice of Default at 2.)

38. Notwithstanding the Notice of Default, Borrower failed to cure the ongoing Event of Default.

39. Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated November 2, 2020 (the "<u>Notice of Acceleration</u>"), a copy of which is attached hereto as ***Exhibit R***, which advised Borrower that "AS OF THE DATE HEREOF, THE EVENT OF DEFAULT IDENTIFIED IN THE NOTICE OF DEFAULT HAS NOT BEEN CURED BY BORROWER AND IS CONTINUING."  (Notice of Acceleration at 2.)

40. The Notice of Acceleration further advised Borrower that:

> AS A RESULT OF THE OCCURRENCE AND CONTINUANCE OF THE EVENT OF DEFAULT DESCRIBED IN THE NOTICE OF DEFAULT, (A) THE DEBT SECURED BY THE MORTGAGE IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE, (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL PAYMENT OF THE DEBT, AND (C) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE UNTIL THE DEBT IS PAID IN FULL.

(Notice of Acceleration at 2.)

41. To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

42. Accordingly, Lender brings this action to foreclose the Mortgage.

### E. Lender's Damages

43. The following amounts are due and owing by Borrower under the Note and the Mortgage as of December 6, 2021, without defense, deduction, offset, recoupment, or counterclaim:

| | |
|---|---|
| Principal Balance | $5,800,000.00 |
| Interest (5/11/20-12/10/21) | 465,483.83 |
| Default Interest (6/6/20-12/5/21) | 441,444.44 |
| Late Fees | 25,766.39 |
| Special Servicing Fees | 59,500.00 |
| Liquidation Fee | 81,766.88 |
| Property Protection Advances | 23,832.13 |
| Yield Maintenance Premium | 1,370,660.97 |
| Payoff Processing Fee | 500.00 |
| *(Less Credit for Reserve Balance* | *69,389.84)* |
| TOTAL AMOUNT DUE a/o 12/6//21 | $8,199,564.80 |

9

DMFIRM #401372302 v1

44. Additional interest and default interest in the aggregate amount of $1,609.50 per diem, together with other fees, charges and costs recoverable under the Loan Documents, have continued and continue to accrue on the Loan since December 6, 2021.

## **COUNT ONE – MORTGAGE FORECLOSURE**

45. Paragraphs 1 through 44 of this Complaint are incorporated herein by reference.

46. Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

47. Borrower has defaulted on its obligations under the Note, the Mortgage, the Loan Agreement and the other Loan Documents.

48. Lender is authorized by the Mortgage and by New York law to foreclose the Mortgage in the event of a default by Borrower.

49. There is currently due and owing on the Loan the sum of $8,199,564.80, together with additional accrued and accruing interest, default interest, fees, charges and costs recoverable under the Loan Documents.

WHEREFORE, Lender respectfully asks that:

(a) Borrower and all persons claiming under it, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and forever foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property, including the Ground Lease, the fixtures and articles of personality upon which the Mortgage is a lien;

(b) The Property (including the Personal Property) be decreed to be sold, according to law, and that the monies arising from such sale be brought into Court;

(c) Lender be paid the amount of $8,199,564.80, together with additional accrued and accruing interest, default interest, fees, charges and costs recoverable under the Loan Documents to the date of sale;

(d) Upon Lender's application, this Court forthwith appoint a receiver of the rents and profits of the Property during the pendency of this action with the usual powers and duties of such receivers in commercial foreclosure actions; and

(e) Lender be awarded such other and further relief as the Court in its discretion may deem just and proper.

Dated:  January 18, 2022

/s/ Raymond A. Quaglia
Raymond A. Quaglia (NY ID 5814264)
Jacquelyn N. Schell (NY ID 5281837)
Justin E. Kerner (NY ID 5505821)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019-5820
(646) 346-8048 (Telephone)
(212) 223-1942 (Fax)
Quaglia@ballardspahr.com
SchellJ@ballardspahr.com
KernerJ@ballardspahr.com

Counsel for Plaintiff